Will the court please call the first case? 109-2204, City of Chicago v. Stevens Counsel, please. Good afternoon, Your Honors. May it please the Court? My name is Hector Scarano and I represent the appellant, City of Chicago, in this case. Keep your voice up a little bit, please. Yes, sir. This case raises the issue whether at the time of the accident, Appellee had deviated from the course of her employment such that she voluntarily removed herself from the protections afforded generally afforded traveling employees under the Illinois Workers' Compensation Act. Because the appellant, City of Chicago, had issued a safety rule and not merely an employment directive prohibiting emergency workers from driving beyond the city limits unless specifically called upon to do so, Appellee's voluntary personal side trip removed her from the course of employment. Thus, the decision of the lower court should be reversed. I would like to discuss Counsel, let me ask you this. If an employee is injured while violating a company rule, is it the law that the injury is not compensable if the violation takes the employee entirely outside the sphere of his or her employment? No, Your Honor. Generally, no. If it's just a violation of a company rule, general rule is, of course, that the employee would be compensated for his or her injury. It is the city's position that this was not merely a violation of a company rule or a company directive, but in fact it was a violation of a safety rule. And the safety rule would be merely being outside of the city limits, having lunch, is a violation of a safety rule? No. The violation is not the fact that she was eating lunch in this case. That is not dispositive of this issue. What is dispositive is the fact that she was told to not leave the city limits, and in fact she did so. Regardless of how many blocks away or how many miles away she was from the city limits, she was, in fact, away from the city limits in prohibition of a company safety rule. Safety rule? It's our contention that it was a safety rule. Aren't you safer outside the city limits of Chicago than you are within? Well, generally, Your Honor, I would answer that. I will not answer that. In this case, the appellee was an emergency services worker. It was her duty to be on call and responding to emergency calls throughout the city of Chicago, whether it was a safe city or not. Again, we won't answer that. But she was, in fact, on call at all times, required to, I guess, drive around the city for approximately eight hours at a time in a company city of Chicago van with her partner monitoring a walkie-talkie radio, waiting for dispatch. The fact that she voluntarily removed herself from the city of Chicago, the city contends that that was a violation of a safety rule in that she had to make herself immediately available to respond to emergency situations. Let's say, for the sake of the argument that's accurate, that there's a subtle component here. And I think the law is well settled that, yes, you know, let's say she's clearly violated a rule you refer to as a safety rule. However, I think the law indicates that if the violation does not take the employee outside, completely outside the sphere of her employment, recovery is not barred. So my question to you is, how was she really taken out of the sphere of her employment when she was still on call doing all of the things she normally does within the city except at the mere physical location? Your Honor, the city's contention is that this was, in fact, a personal side trip. She had the opportunity to go to lunch. Again, the issue that she was at lunch is not dispositive. She could have gone anywhere in the city to lunch so long as she was within the city limits. In fact, she did not. The fact that she removed herself from the city limits, that right there we contend is a personal side trip. And also, Your Honor, both at the commission as well as the circuit court, the appellee could not provide any credible testimony nor evidence as to what, in fact, she was doing. We know that she was maybe eating lunch, finishing up lunch, and she was in this vehicle as she's turning around, making her way back to the city limits. In fact, she was, from the record and what we have available, she was, in fact, traveling further away from the city and making her way back around to the city limits when she was, in fact, involved in this market. What about the fact it was Memorial Day, she testified, and a lot of the restaurants were closed in this city? What about that fact? Well, Your Honor, another point that the city believes is a salient point here is that part of her job responsibilities was to stay in the vicinity of her last call. In this case, her last call was nine miles from where she was involved in an accident. That's not in the general vicinity. She could have, I'm sure, stayed within the general vicinity of her last call, again, nine miles from where she was involved in the motor vehicle accident, and I'm assuming there could have been a place for her to eat somewhere around there, but instead she voluntarily decided to remove herself from the city limits. All right. We know the Industrial Commission found against your position. Do you have any case law authority that supports the proposition that merely by merely violating a company rule, a city rule, in and of itself precludes recovery? Two, Your Honor. The first is Checker Taxi Cab Company v. Industrial Commission. It's a, I believe, a 1970 decision, and the fact pattern is eerily similar to the case at Barr where a Chicago taxi driver decided to, after dropping off a fare in downtown Chicago, decided to then make his way to Maywood to visit a friend at the hospital. On the way back from the hospital, making his way back into the city limits, analogous to the case here, he was involved in a motor vehicle accident when apparently the steering mechanism of his vehicle locked up on him and he crashed. Well, is visiting a friend related to employment or not? In this case, it was not, and neither was, neither was. Well, having lunch, she has to have lunch somewhere, and as I understand it in the facts, it's contemplated she'll have lunch.  Correct. She's in a van. Correct. So it appears there's nothing wrong with her and the city's viewpoint of her stepping out of the van and going into a restaurant, as long as the restaurant's in the city limits. That is correct. Again, what is dispositive here is that she removed herself from the city limits. The city is a big, big area. She could have gone anywhere, and specifically, she could have been anywhere near her last call, which was approximately 9 miles away. But it's not disputed that she did, while she had lunch, at least the evidence of her testimony, that she performed her duties while she was eating lunch, which she was required to do, and that was to keep the radio on and be on call. Well, Your Honor, yes and no. I mean, we don't have credible testimony from her which suggests what she was in fact doing at the time of the accident. In fact, the city had two witnesses come forth, and one was Howard Gibson, the appellee supervisor, and Benjamin Alonzo, who's the director of emergency services for the city of Chicago. And they both testified that they have no call or call logs of there being a call at the time of this incident. So we don't know if she was monitoring the radio. She testified that she was actually receiving a call at the time, but no logs were ever presented. She never presented the call logs. And both Mr. Alonzo and Mr. Gibson have no record of these logs. Well, she called. She called when she stopped for lunch, of course she would. She did. She actually did. It was part of, again, there was an employee, an employee director. Does that require the employee to call when you stop for lunch? Yes. All right. And then what does the employer or the person on the other end of the phone say? Where are you? I, Your Honor, specifically to that question, I don't know. What is available to us, excuse me, is that if an employee does make a call and say, I'm going to wherever to have lunch, it's part of the directive for them to monitor the radio, make sure that they are available on call, and if there's a call generally wherever in the city limits, then they're expected to drive to that location. And she did call and say, I'm at lunch. She did call to say she was at lunch from what we believe, what we have here, I believe that she did call. I cannot speak specifically to that. Maybe Appelli can clarify that point. Did she also testify that she was monitoring the radio? She testified that she was, in fact, monitoring the radio, but she also said that she had received a call at the time of the collision. So we don't know if she had received a call prior to there being an accident and she's turning around and making her way back to the city and then she was involved in the accident. But again, both Mr. Alonzo, her supervisor, excuse me, the director of emergency services for the City of Chicago, and Mr. Gibson, her supervisor, have no record of a call being made at that time. And they keep meticulous records. Okay. And you think that that would then go to her credibility? Is that what you're saying? It goes not only to her credibility, Your Honor, but it also goes to the fact that she, this was a personal, this was a risk inherent to, not inherent to the job. She was not performing her job duties at the time. But specifically, yes, it does go to the heart of her credibility. Because the City of Chicago, with these emergency services workers. And you're saying she wasn't performing her job duties because she wasn't inside the city limits? Correct. Wasn't she really performing her job duties except she wasn't? In other words, she was doing nothing differently, was she, than what she would normally have done, except she was having lunch outside the city limits. I don't know what she was, in fact, doing at that time. But from what we have in the record, sure. Apparently she was monitoring the radio. However, I stress that the city believes that it's crucial for these employees to pay particular attention to these safety rules and not merely employment directives in that they have, these emergency workers must respond. They're on call to make emergency calls throughout the city. If she removed herself from the city limits, well, of course, then the response time is greater at that point. How far was she from the city limits? She was approximately 20 blocks. I don't know what that translates into miles, but approximately 20 blocks. There's 12 blocks, which would be a mile. I mean, I think there's some legitimate policy reasons that would support the city's desire to have the employee remain, even in this case, within the city limits. But whether or not, under the Workers' Compensation Act, it's a compensable injury is sort of a separate issue. But you alluded to another case that you said supported your position. What is that case? Yes, sir. That case is a public service company of Northern Illinois v. Industrial Commission. Going back a bit, it's a 1946 case. But the facts are very, very similar to the case at hand here. That was an employee who was authorized to drive a vehicle from one company garage to another. It had been directed, in fact, not to go anywhere else but one employee garage to another. He, in fact, drove past this certain garage, presumably it was to drop off this car. And then he was unfortunately involved in a fatal accident when his vehicle met a train. The court held that the accident was not compensable because him driving home, even though he was driving home because of a call that he received from his family, may have been a family emergency, they concluded, the court concluded, that that was not within his employment duties and that the risk was wholly his. And how do you respond to this argument? The argument is those cases you cited are distinguishable from this situation in one specific manner. In both of those cases, the employee violated rules as to both physical location and conduct. Here, arguably, she violated a rule only as to physical location. So are those cases really on point or are they distinguishable? I think to a certain degree they are distinguishable, but the city also believes that they are on point. The fact of the matter is that the appellee has not been able to come up with one other case that has a similar fact pattern at all to what we have here in this case. Yes, Your Honor? What was that case? It's Public Service Company v. Northern Illinois. And this is your brief? It should be there. I did not draft it. It should be there. Well, I didn't draft the brief, Your Honor. I'm sorry. Well, I can't find it. Okay. Well, I apologize for that. Do you think we should be discussing those cases? Well, we can certainly talk about Checker. Checker should definitely be in that brief. With respect to the Public Services Company of Northern Illinois, I apologize to the Court. I was not responsible for the drafting of the brief. I don't think we should hear any more about public service. Excuse me? We shouldn't hear any more about public service. Okay. Well, going back to Checker Taxi, then, again, the 1970 decision, the Court in that case held that the fact that the driver had not reentered the city limits at the time of this motor vehicle accident, again, the steering mechanism had locked up on him, that because he was only authorized to work in the city limits, the injury was not compensable. Where was he going when he had the accident, or where was he coming from when he had the accident? He was making his way back from Maywood Hospital. Right. But he was off doing something that everyone would concede had nothing to do with his work-related duties, correct? Right. But her having lunch is also not a work-related duty, Your Honor. It's within the scope of her duties. Clearly, the city authorized her to have lunch outside her van. Right? Sure. So how is it outside? How does the physical location take it outside of her duties? Because the city believes that she violated a safety rule. What's your best case to suggest that mere violation of a safety rule takes an employee out of the scope of their duties? Excuse me, Your Honor? What's the best case that you have that stands for the proposition that violation of a safety rule takes an employee out of the scope of their duties? Well, with the exception of that other case that we're not discussing, it's check or taxi. Does it say that a violation of a safety rule takes an employee out of the scope of their duties? Oh, I'm sorry. I'm sorry. I apologize. I misunderstood the question. In terms of a safety rule, we probably have ‑‑ Mere violation of a safety rule doesn't take an employee out of the scope of their duties. If a window washer doesn't wear his harness and falls off the scaffold, are you going to tell him he's outside the scope of his duties? No. Wearing a harness is a safety rule, isn't it? I would presume so, yes. Well, then the fact that it's a safety rule is kind of irrelevant. The question becomes, does the action of the employee take them out of the scope of their duties? I guess on point, Your Honor, one of the cases that we do have here is a Saunders v. Industrial Commission, a 2000 case in which an employee hitched a ride on a forklift with another coworker, making his way from one area to another to pick up lunch. Something happened. He fell off. He was injured. The employer had direct ‑‑ had a safety rule prohibiting such conduct. The fact that it's a safety rule is irrelevant. The question becomes, is hitching a ride on a forklift on the way to the lunchroom within the scope of your duties? And if the answer to that is no, it doesn't make any difference if it's a safety rule, a directive from his foreman, or what it is. You keep seizing this notion that because it's a safety rule that that is ‑‑ there's some magic to that, and it's kind of irrelevant what kind of a rule it is. Well, Your Honor, we ‑‑ I keep on discussing the fact that it's a safety rule because it was precisely because the appellee misinterpreted this employment directive that she was injured. I mean, if she would have stayed within the city, if she would have just gone to eat somewhere else within the location of her last call, which was, again, nine miles away from where she was involved in this motor vehicle accident, then we wouldn't be having this conversation. If that window washer had worn his harness, he wouldn't have fallen off the scaffold, and we wouldn't have a workers' compensation case. But we do every time they fall off without his harness. Counsel, you have time on rebuttal. Thank you, Your Honor. Thank you, Counsel. Please. Good afternoon. Donna Sudeikis for Sally Stevens. I think that the commission and the arbitrator and the circuit court correctly ruled in the employee's favor in this case. A mere de minimis violation of an employment rule does not take you out of the scope of your employment. Why do you refer to this as a de minimis violation? What should we look at to conclude that it's de minimis? I think a more major violation would be, for example, the masonry case where the bricklayer fails to close a gate and then falls. That's a much more important rule than simply not crossing the border into Evergreen Park. And counsel cites the Checker taxi case. What counsel forgot to remind us with reference to the Checker taxi case is this was a taxi driver who left his taxi, went to visit a friend in Maywood, somehow ended up with a blood alcohol level of .22 and then got into an accident. I don't think that was mentioned. I think that the Pine case held that the deviation has to be exceedingly marked and unusual for an employee who is otherwise in the scope of his employment to be knocked out of it by a violation of a rule. What was he referring to with nine miles? I heard him use it. I don't know. Well, I don't know. Nine miles from the last call. Nine miles from the last call. I think it's nine blocks, Your Honor, not nine miles. I think she had just crossed the border on 95th Street from the city of Chicago into Evergreen Park. So it was near the city limits. Absolutely. And also I think in the brief we mentioned that the employee testified that although her job is typically the city of Chicago, she has had documented calls to go to Evergreen Park, Oak Park, et cetera. I think both parties agree on that. But isn't that a little different? I mean, you have a documented call where you're directed to go outside the city limits as opposed to you took yourself outside the city limits? That's correct. That's correct. But I think this is still a de minimis rule. I mean, rather a de minimis violation. My client was driving the van that she was supposed to be driving. She was monitoring her radio. And all that she was doing was for the benefit of her employee. How about this credibility issue raised by opposing counsel that there was a statement by her that she was responding to a call that the call was? Well, let's keep in mind that, number one, it is a holiday weekend. And sometimes things do get lost over the holidays. However, my client's testimony is evidence. The fact that the city was unable to produce a log entry is not my client's fault. I mean, she volunteered to work on a holiday. And this is what happened. From a public policy standpoint, I think the city or a municipality would have legitimate policy reasons to have rules to keep employees within the city. So if employees can just violate these rules at will and go all over the place, is that just meaningless that they have these rules? She's not going all over the place. Her job is to drive the van. She was driving the van. Her job was to have the radio on. It's uncontroverted that she was monitoring the radio. It was a holiday weekend. Restaurants were closed. She needed to get lunch. She had a right to get lunch. They didn't provide her with a company cafeteria. She radioed in that she was going to lunch. And she went to a restaurant that was relatively close to the area that she was at. She's not disputing the fact that she violated the city's rule, is she? No. The law is that a de minimis violation does not take you out of the scope of your employment. Do you have any cases that define the phrase de minimis? I think that we have to go by example. In masonry, the bricklayer failed to secure a gate and fell. He was told to secure a gate. That's important. It keeps you from falling off a building. I think we can figure that out by the facts of the case. De minimis is a term that's really not used. It's whether or not the employee is outside the scope. A de minimis isn't really a standard that we would apply, is it? I mean... Well, outside the scope is the final conclusion that we're trying to get to. I think the phrase de minimis refers to the fact that we have rules at our employment, but some are more important than others, and some are such gross violations that they really take you out of your job. You're not doing what you're supposed to be doing. You're not doing anything for the benefit of the employer. My client was doing everything for the benefit of her employer. So other than being outside the scope, your position very clearly is there was nothing different about what she was doing than she would ordinarily do, albeit for the fact that she was a few minutes outside the city. Correct. On a holiday weekend. Thank you. Thank you, counsel. Rebuttal, please. Notice when you signed in, what is your name? My name is Hector Scarano. S-C-A-R-A-N-O. S-C... A-R-A-N-O. Scarano. Okay. Thank you. You're welcome, Your Honor. Your Honor, first of all, counsel is obfuscating the intoxication issue here in Checker Taxi. The nth degree here. The Court specifically said we did not, we need not decide whether the claimant's intoxication is a defense to this claim. Bottom line. Done. The fact that she has brought it up and the counsel has brought it up in their briefs and now here on oral argument is ridiculous. Your Honor, with respect to the issue of nine miles, nine miles specifically is the distance from where she was at the time of the accident from where she was during her last emergency call. The distance of approximately nine miles. The testimony at the Commission and in the record obviously reflects this, is that one of the employment directives was that she stay within the vicinity of her last call. And again, I don't know if nine miles is within the vicinity, but it was nine miles nonetheless. Did she address that at all in her testimony before the arbitrator? I believe she did, yes. And what was the explanation that was tendered? She said she couldn't find any restaurants up and down where she was located, so she decided to go on 95th to eat. And finally, Your Honor, the fact that it's a holiday weekend, again, the city just doesn't see that as dispositive either. I mean, the fact that it's a holiday weekend just because certain restaurants near where she should have been were closed doesn't really speak to much. She should have stayed within that vicinity. I'm sure she could have found a place to eat somewhere near her last call, but instead she decided voluntarily to take herself away from that last call and found herself in a motor vehicle accident, again, away from the city, which we believe was a safety rule and, again, not an employment directive. Thank you, Your Honor. Thank you, counsel. The court will take the matter under advisory for discussion.